IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-CV-63-D

JOSEPH W. HOFFLER,  )
                    )
        Plaintiff,  )
                    )
    v.              )      **ORDER**
                    )
CHARLES HAGEL, Secretary of Defense, )
and DEBORAH LEE JAMES, Secretary of  )
the Air Force,      )
                    )
        Defendants. )

On October 17, 2014, Joseph W. Hoffler ("Hoffler" or "plaintiff"), proceeding pro se, filed suit against Charles Hagel, Secretary of Defense, and Deborah Lee James, Secretary of the Air Force (collectively, "defendants") [D.E. 1].[1] Hoffler alleges that defendants violated the Administrative Procedure Act ("APA") when the Air Force Board for the Correction of Military Records ("AFBCMR") denied Hoffler's request for his military records to be corrected and for him to be promoted to colonel. Compl. [D.E. 1] 42–43. On January 6, 2015, Hoffler filed an amended complaint [D.E. 18]. Hoffler attached numerous documents to both complaints. On March 5, 2015, defendants moved to dismiss the case for lack of subject-matter jurisdiction or, in the alternative, for summary judgment [D.E. 21]. On March 6, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Hoffler about the motion, the consequences of failing to respond, and the response deadline [D.E. 24]. On April 27, 2015, Hoffler responded in opposition [D.E. 32]. On May 26, 2015, defendants replied [D.E. 35]. As explained below, the court grants in part and denies in part defendants' motion to dismiss for lack of subject-matter

---

[1] Defendant Ashton B. Carter, Secretary of Defense, has been automatically substituted for former Secretary Charles Hagel. See Fed. R. Civ. P. 25(d).

jurisdiction, and grants defendants' motion for summary judgment.

I.

Hoffler is a retired lieutenant colonel in the United States Air Force ("Air Force"). See [D.E. 22-1] 3 (AR 1). On September 27, 1962, Hoffler enlisted in the Air Force. Id. 37 (AR 35). After graduating from the Air Force Officer's Training School in July 1964, Hoffler served in multiple positions before being named commander of the 7625th Security Police Squadron at the Air Force Academy in June 1979. Am. Compl. [D.E. 18] ¶¶ 9–20. In October 1979, Hoffler was promoted to lieutenant colonel. Id. 5. "In December 1983, [Hoffler's] career advisor called him and informed him that he was 'looking good' for promotion to colonel." Id. ¶ 24.

In late 1983 or early 1984, Hoffler requested an extension of his assignment at the Air Force Academy, which was scheduled to end in June 1984, to September or October 1984. Id. 5–6. Although Colonel Melville, the then-Vice Chief of Staff at the Air Force Academy, initially denied the extension request, Colonel Henn, the Chief of Staff, approved the extension through September 1984. Id. 6–7. On January 17, 1984, in an attempt "to circumvent" a review by Colonel Melville from reaching the colonel's board, Hoffler submitted his retirement papers for Colonel Henn's approval so that Colonel Henn would write a (presumably) favorable review for Hoffler's promotion to colonel, but Hoffler planned on "rescind[ing] his retirement paperwork and meet[ing] the colonel's board" at the end of his extension in September. Id. ¶¶ 32–33; [D.E. 22-1] 102 (AR 100). Hoffler "plann[ed] on being a 30 year Air Force man." Am. Compl. ¶ 33.

In early 1984, Colonel Melville replaced Colonel Henn as Chief of Staff. See id. ¶¶ 27, 38. In March 1984, following "allegations of fraud, waste, and abuse made to the [Inspector General]" by a member of Hoffler's squadron, Colonel Melville ordered a "special inquiry." [D.E. 22-1] 40 (AR 38); Am. Compl. ¶¶ 35, 38. After the inquiry was complete, a reviewing officer concluded that

2

"[t]he evidence persuade[s] me" that Hoffler took government property for personal use, "countenanced and participated in gambling in the unit," and "abused his authority" with respect to a subordinate. [D.E. 22-1] 72 (AR 70).

On April 23, 1984, Colonel Melville issued a Letter of Reprimand ("LOR") to Hoffler, based on the special inquiry's findings. Id. 68 (AR 66). On April 26, 1984, Hoffler acknowledged receiving the LOR. Id. Hoffler contends that Colonel Melville issued the LOR to "destroy [Hoffler's] outstanding military career." Am. Compl. ¶¶ 67–68, 121.

On August 16, 1984, Hoffler filed a complaint and alleged that he received the LOR and was "fired from command of his squadron" because of Colonel Melville's "racial beliefs." [D.E. 22-1] 39 (AR 37); cf. Am. Compl. ¶¶ 41–43. On August 21, 1984, the Air Force ordered an Equal Opportunity and Treatment ("EOT") inquiry. [D.E. 22-1] 39 (AR 37). The inquiry officer concluded that, although the earlier "investigation of fraud, waste and abuse was conducted in an unprofessional manner," he could "find no compelling evidence to conclude that decisions made were on the basis of [Hoffler's] race." Id. 41 (AR 39).

On September 10, 1984, Hoffler was not selected for promotion to colonel. Id. 102 (AR 100). The promotion board saw his January 17, 1984 application for voluntary retirement, but no evidence suggests that the board saw the LOR. Id. 8 (AR 6). On September 30, 1984, Hoffler retired from the Air Force. Id. 8, 66 (AR 6, 64). The Air Force awarded Hoffler the Air Force Meritorious Service Medal ("MSM") for his service at the Air Force Academy. Id. 110 (AR 108). On May 21, 1985, however, the Superintendent of the Air Force Academy, Lieutenant General Scott, revoked Hoffler's MSM award, based on a March 29, 1985 inquiry. Id. 70, 110 (AR 68, 108).

In 1987, Hoffler appealed the revocation of the MSM to the AFBCMR and alleged that the revocation was "based on a very biased investigation which was a reprisal for his writing to his

3

Senator." Id. 110 (AR 108). On October 26, 1987, the AFBCMR concluded that Hoffler failed to provide substantive evidence to prove that General Scott's revocation was an abuse of discretion, improper, or based on erroneous information. Id. 112 (AR 110). Thus, the AFBCMR denied Hoffler's request. Id.; see also id. 64 (AR 62).

On June 30, 2008, Hoffler again applied to the AFBCMR for correction of his military records by removing the LOR, promoting him to colonel, and reconsidering the MSM award. Id. 3, 13 (AR 1, 11). Although the application was untimely, the AFBCMR excused the application's untimeliness in the interest of justice. Id. 10 (AR 8). The AFBCMR concluded that Hoffler failed to present sufficient relevant evidence "to demonstrate the existence of error or injustice," and denied the application on January 14, 2009. Id. 3, 10 (AR 1, 8).

On February 20, 2014, Hoffler sent a letter to the Secretary of Defense. See id. 3 (AR 1). On March 20, 2014, the Director of the Air Force Review Boards Agency informed Hoffler that Hoffler had "exhausted all available administrative remedies." Id. 3–4 (AR 1–2). On October 17, 2014, Hoffler filed the instant action. [D.E. 1].

II.

Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [D.E. 21]; see Fed. R. Civ. P. 12(b)(1). Hoffler must establish jurisdiction. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94, 104 (1998); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When, as here, a defendant facially challenges the sufficiency of the allegations to support subject-matter jurisdiction, "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). Additionally, a suit against the federal government or its officers in their official capacities

4

requires the plaintiff to prove a waiver of sovereign immunity. See Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 733–34 (1982); Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997); Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994); Portsmouth Redev. & Hous. Auth. v. Pierce, 706 F.2d 471, 473 (4th Cir. 1983).

Hoffler argues two statutory waivers of sovereign immunity grant this court subject-matter jurisdiction: (1) the APA, codified at 5 U.S.C. § 702; and (2) Title VII, codified at 42 U.S.C. § 2000e-16. See Am. Compl. 40–41 (advancing a claim under the APA); Pl.'s Mem. [D.E. 32] 23 (noting that the "essential issues of the case" include "racial discrimination [and] hostile workplace").[2] The court addresses each argument in turn.

A.

The APA permits private parties to sue the federal government to seek "relief other than money damages" for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. Accordingly, to have jurisdiction over an APA claim, the court must find that (1) Hoffler seeks relief other than money damages, and (2) there is no other adequate remedy in a court, including the United States Court of Federal Claims ("Claims Court"). See 5 U.S.C. §§ 702, 704; Bowen v. Massachusetts, 487 U.S. 879, 891 (1988); James v. Caldera, 159 F.3d 573, 578–79

---

[2] Defendants argue that Hoffler raises a claim pursuant to 10 U.S.C. § 628 because he requests that the court order that a special selection board be convened. Defs.' Mem. [D.E. 22] 9. Hoffler, however, cannot receive relief from this court under section 628. Section 628 permits a court to "review a determination . . . not to convene a special selection board" under specified circumstances, or to review "the action of a special selection board." See 10 U.S.C. § 628(g)(1), (2). Here, the Secretary of the Air Force made no determination concerning a special selection board that is reviewable under section 628 because Hoffler requested a direct promotion to colonel from the AFBCMR, rather than seeking the consideration of a special selection board. See [D.E. 22-1] 6, 17, 22 (AR 4, 15, 20). Thus, if Hoffler seeks relief under section 628, there is nothing for the court to review under section 628.

5

(Fed. Cir. 1998).

As for the first requirement, defendants do not argue, and it does not appear from the record, that Hoffler seeks money damages. See Bowen, 487 U.S. at 900–01, 910; Schism v. United States, 316 F.3d 1259, 1268 (Fed. Cir. 2002) (en banc); Ulmet v. United States, 888 F.2d 1028, 1030–31 (4th Cir. 1989); Nieves v. McHugh, No. 5:14-CV-434-D, 2015 WL 3540455, at *4–6 (E.D.N.C. June 3, 2015); Defs.' Mem. [D.E. 22] 11–12. Thus, section 702's waiver of sovereign immunity applies.

As for the second requirement, section 704 permits judicial review for "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. Defendants argue that the Claims Court provides an adequate remedy for Hoffler and that this court cannot review Hoffler's claim under the APA. Defs.' Mem. 11–12. Under the Tucker Act, the Claims Court has exclusive jurisdiction for nontort monetary claims for more than $10,000 against the United States. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort."); United States v. Hohri, 482 U.S. 64, 66 n.1 (1987); Randall v. United States, 95 F.3d 339, 347 (4th Cir. 1996). The Claims Court offers "precisely the kind of 'special and adequate review procedures' that are needed to remedy particular categories of past injuries . . . for which various federal statutes provide compensation." Bowen, 487 U.S. at 904 n.39.

Generally, the Claims Court cannot provide equitable relief. Id. at 905 & n.40 ("The Claims Court does not have the general equitable powers of a district court to grant prospective relief."); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc); Randall, 95 F.3d at 347. Where, however, the Claims Court has proper jurisdiction over a nontort monetary claim under section 1491(a)(1), the Claims Court can "issue orders directing . . . placement in appropriate duty

6

or retirement status, and correction of applicable records" if that order is necessary "[t]o provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). For example, "the Claims Court may, in appropriate military back pay cases, 'provide an entire remedy,' including 'restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records.'" Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991) (quoting 28 U.S.C. § 1491(a)(2)). In determining whether Hoffler states a claim under the Tucker Act, the court looks to the "essence of his complaint." Randall, 95 F.3d at 347; see James, 159 F.3d at 579 ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must look to the true nature of the action in determining the existence or not of jurisdiction." (quotation omitted)).

Hoffler essentially complains that the AFBCMR improperly refused to grant him the relief he sought, which was primarily the reinstatement of the MSM, the removal of the allegedly "unjust" LOR that "negatively impacted his chance at promotion to Colonel," and promotion to colonel. See Am. Compl. 41; [D.E. 22-1] 6 (AR 4). Hoffler seeks injunctive relief from this court ordering that the AFBCMR's decision be set aside, the LOR be removed from his personnel file, the MSM be reinstated, and that a special selection board be convened to consider Hoffler's promotion to colonel. Am. Compl. 41 (Prayer for Relief (A)–(D)). Hoffler also seeks "any other relief, including active duty back pay and retired pay, as this Honorable Court deems just and proper." Id. (Prayer for Relief (E)).

In Randall, the Fourth Circuit considered whether the district court properly construed the plaintiff's claim as an APA claim rather than a Tucker Act claim. Randall, 95 F.3d at 346–48. The plaintiff in Randall was an active servicemember who claimed he was improperly denied promotion to lieutenant colonel because of a few Officer Evaluation Reports ("OERs") in his personnel file in

7

which he was unfavorably ranked. Id. at 340–42. Arguing that he was the victim of racial discrimination, the plaintiff administratively appealed these OERs and asked that they be expunged from his record. Id. at 340–41. His appeals were denied, and he was denied promotion to lieutenant colonel. Id. at 342. The plaintiff then appealed to the Army Board for the Correction of Military Records ("ABCMR"), requesting upgraded evaluations in the OERS or the deletion of the unfavorable OERs from his record and his promotion to lieutenant colonel. Id. When the ABCMR denied his request for relief, he filed suit in federal district court and claimed that he was unlawfully discriminated against in violation of Title VII and that the Army failed to "follow its own regulations in reviewing his request for correction of military records." Id. He sought injunctive relief, including an order requiring that the unfavorable OERs be upgraded or removed and that he be retroactively promoted to lieutenant colonel with back pay. Id. The district court found that the Little Tucker Act did not provide jurisdiction because the plaintiff's "claims were primarily for equitable relief." Id. at 347.

In affirming the district court's judgment, the Fourth Circuit noted that "[t]he injunctive relief requested by [p]laintiff would not be available under the Tucker Act because it would not be an incident of, or collateral to, a monetary award. . . . Indeed, [p]laintiff's claim for back pay <u>would only arise</u> if [p]laintiff's request for retroactive promotion were granted." Id. (emphasis added, footnote omitted).[3] Noting that courts "will not interject themselves into the promotion process," the Fourth Circuit reasoned that the only available relief was a court order remanding the case for

---

[3] The Randall court noted in dicta that its analysis would be different where a <u>discharged</u> servicemember brought an action because that plaintiff would have a cause of action for back pay. Randall, 95 F.3d at 347 & n.10; cf. James, 159 F.3d at 581 ("If an enlisted member of the Armed Services is wrongfully discharged before the end of his or her current term of enlistment, the right to pay conferred by [section] 204 continues and serves as the basis for Tucker Act jurisdiction."). Here, unlike the hypothetical plaintiff discussed in Randall, Hoffler elected to retire. Thus, Hoffler has no statutory claim to further compensation under Randall.

"another review in due course by the appropriate promotion selection board." Id. at 348 (quotation omitted). Accordingly, the Fourth Circuit held, "there is no basis for back pay in this case and, therefore, no monetary damages on which to premise jurisdiction under the Tucker Act" because the plaintiff "cannot receive a court-ordered retroactive promotion." Id.

Similarly, in this case there is no basis for back pay, and hence no statutory basis for a Tucker Act claim, because any such claim might "only arise if [Hoffler's] request for retroactive promotion were granted." Id. at 348. Hoffler does not claim that he was unlawfully discharged. Rather, he asserts that he retired (after failing to rescind his retirement paperwork) when his commanding officer improperly issued him an LOR that effectively ended his chances of being promoted to colonel. Thus, unlike the cases cited by defendants, see Defs.' Mem. 11–12, Hoffler had no statutory right to active duty pay after he retired. See James, 159 F.3d at 581. Accordingly, Hoffler's complaint does not present a Tucker Act claim and section 704 does not bar to this court's jurisdiction over Hoffler's APA claim.

In opposition to this conclusion, defendants argue that Hoffler's explicit request for "any other relief, including active duty back pay and retired pay" creates a Tucker Act claim. See Defs.' Mem. 11. Defendants cite Schwalier v. Hagel, 734 F.3d 1218 (D.C. Cir. 2013), and argue that Hoffler's explicit request demands that the court view his claim as arising under the Tucker Act. In Schwalier, a retired brigadier general sought equitable relief reinstating earlier decisions of the AFBCMR in which the AFBCMR approved his promotion to major general. Schwalier, 734 F.3d at 1219. The Schwalier court, however, held that the plaintiff's complaint presented a Tucker Act claim because he also requested "any other relief, including active duty pay and retired pay." Id. at 1219, 1222 (emphasis omitted). The D.C. Circuit rejected the plaintiff's argument that "[a]ny monetary recovery would come from a favorable decision by the Board, not the court" because of

9

circuit precedent stating that the court would "only look to the essence of a complaint in the absence of an explicit request for monetary relief." Id. at 1221.

The facts in Schwalier are similar to those presented here, and, were this court within the purview of the United States Court of Appeals for the District of Columbia, Schwalier would require dismissing Hoffler's claim for lack of subject-matter jurisdiction. This court is bound, however, to follow Fourth Circuit precedent, and in Randall the Fourth Circuit affirmed the district court's conclusion that the plaintiff presented a claim under the APA despite a request for back pay because that request hinged on equitable relief that the Claims Court could not grant without an independent monetary claim. Randall, 95 F. 3d at 347–48. Here, any monetary relief to which Hoffler might be entitled is contingent upon the granting of the equitable relief that he seeks, and therefore the equitable relief cannot be "an incident of and collateral to" the monetary relief. See 28 U.S.C. § 1491(a)(2).

Defendants also cite Mitchell and Huff v. United States Department of the Army, 508 F. Supp. 2d 459 (D. Md. 2007), for the proposition that "a servicemember's request for back pay or retirement benefits, even if ancillary to judicial review of a BCMR decision, is generally construed as a claim for relief under the Tucke[r] Act and subject to the jurisdictional limitations of that statute." Defs.' Mem. 11. In both Mitchell and Huff, however, the plaintiffs were discharged servicemembers who claimed that they had been wrongfully discharged. See Mitchell, 930 F.2d at 894; Huff, 508 F. Supp. 2d at 461. As servicemembers who were allegedly wrongfully discharged, they each had statutory claims to back pay, and it was that statutory entitlement that created Claims Court jurisdiction under the Tucker Act. See James, 159 F.3d at 582–83. As a voluntary retiree, and in spite of his prayer for relief, Hoffler has not shown any statutory entitlement to active duty back pay after his retirement date. Thus, Mitchell and Huff do not help the defendants.

10

In sum, the APA's waiver of sovereign immunity applies and the court has jurisdiction over Hoffler's APA claim because there is no other adequate remedy in a court. Accordingly, the court denies defendants' motion to dismiss Hoffler's APA claim for lack of subject-matter jurisdiction.

B.

Hoffler also appears to assert jurisdiction under Title VII. See Pl.'s Mem. 23. Title VII does not apply to uniformed service members. See, e.g., Middlebrooks v. Leavitt, 525 F.3d 341, 344 (4th Cir. 2008); Randall, 95 F.3d at 343; Roper v. Dep't of Army, 832 F.2d 247, 247–48 (2d Cir. 1987). Accordingly, the court grants defendants' motion to dismiss any Title VII claim that Hoffler asserts.

III.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record,

11

the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587.

The Rule 56(a) standard applies differently in an APA claim. "A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Ohio Valley Envtl. Coal. v. Hurst, 604 F. Supp. 2d 860, 879 (S.D. W. Va. 2009) (quotation omitted); see Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985). Thus, in an APA claim, "summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Hurst, 604 F. Supp. 2d at 879 (quotation omitted); see Kight v. United States, 850 F. Supp. 2d 165, 169 (D.D.C. 2012).

Under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995) (quotation omitted); see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Babbitt, 66 F.3d at 1335 (quotation omitted). Courts, however, "must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth., 647 F.3d 514, 517 (4th Cir. 2011) (quotation and alteration omitted). "Although the scope of review is

narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." Ohio River Valley Envtl. Coal., Inc. v. Kempthorne, 473 F.3d 94, 102–03 (4th Cir. 2006) (quotation omitted). In its review, the court focuses on the administrative record. Babbitt, 66 F.3d at 1335–36.

In the context of military boards, "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." Chappell v. Wallace, 462 U.S. 296, 303 (1983); see Haselwander v. McHugh, 774 F.3d 990, 996 (D.C. Cir. 2014); Randall, 95 F.3d at 348 ("The district court's review of the ABCMR's decision is quite limited. . . . [S]uch decisions can be set aside only if they are arbitrary, capricious, or not based on substantial evidence." (quotation omitted)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted).

Here, the administrative record shows that the AFBCMR did not act arbitrarily or capriciously when it denied Hoffler's request for relief, and substantial evidence supports the AFBCMR's decision.[4] The EOT inquiry, on which Hoffler relies, see Am. Compl. 10–12, found that there was "no compelling evidence to conclude that decisions made were on the basis of [Hoffler's] race," including Melville's issuance to Hoffler of an LOR. [D.E. 22-1] 39–41 (AR 37–39); see also [D.E. 22-1] 72–73 (AR 70–71) (report by Staff Judge Advocate recommending discipline for Hoffler). The AFBCMR permissibly concluded that Colonel Melville's decision to issue the LOR was an "exercise of [his] supervisory authority and responsibility." Id. 8, 10 (AR 6, 8).

---

[4] Hoffler's claim is justiciable because he alleges that the AFBCMR violated the APA and military regulations, and he has exhausted his intraservice corrective measures. See Wilt v. Gilmore, 62 F. App'x 484, 487 (4th Cir. 2003) (per curiam) (unpublished); Am. Compl. 40; [D.E. 22-1] 3–4 (AR 1–2).

13

As for the MSM revocation, Lieutenant General Scott, not Colonel Melville, ordered the revocation. Id. 70, 110 (AR 68, 108). Hoffler offered no evidence to the AFBCMR that General Scott's actions were inappropriate. Id. 111–12 (AR 109–10). Thus, the AFBCMR permissibly denied relief to Hoffler.

Finally, the AFBCMR permissibly denied Hoffler's request for a direct promotion to colonel. The AFBCMR reasoned that the contention that Hoffler "would have been promoted absent the LOR is total speculation as only a duly appointed selection board can determine who is among the best qualified for promotion." Id. 10 (AR 8). Given the lack of evidence that the promotion board even saw the LOR, and that substantial evidence supported issuing the LOR even if the promotion board did see it, the AFBCMR did not act arbitrarily or capriciously when it denied Hoffler's request for a direct promotion to colonel and refused to sua sponte refer the matter to a special selection board.

Simply put, the administrative record supports the AFBCMR's decision to deny relief to Hoffler, and the board's decision was not arbitrary or capricious. Accordingly, the court grants defendants' motion for summary judgment on Hoffler's APA claim.

IV.

In sum, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss for lack of subject-matter jurisdiction [D.E. 21]. The court has subject-matter jurisdiction over Hoffler's APA claim but not over any claim asserted under Title VII. The court GRANTS defendants' alternative motion for summary judgment on Hoffler's APA claim [D.E. 21]. The clerk shall close the case.

SO ORDERED. This _10_ day of August 2015.

JAMES C. DEVER III
Chief United States District Judge

14